## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

VENDITA CRE, LLC, DOUGLAS
SULLINGER, and BRANDY MCADAMS

        Plaintiffs,

v.

NEW AMERICA NETWORK, INC.
d/b/a NAI GLOBAL AND BURNS
SCALO REAL ESTATE INC. d/b/a NAI
BURNS SCALO,

        Defendants.

CIVIL ACTION NO.: 8:25-cv-2763

**JURY TRIAL  DEMANDED**

## COMPLAINT

Plaintiffs Vendita CRE, LLC ("Vendita"), Douglas Sullinger ("Sullinger"), and Brandy McAdams ("McAdams") (collectively referred to herein as "Plaintiffs") by and through their attorneys, hereby alleges for its Complaint against New America Network, Inc. d/b/a NAI Global ("NAI Global") and Burns Scalo Real Estate Inc. d/b/a NAI Burns Scalo ("Burns Scalo") (NAI Global and Burns Scalo are hereinafter referred to collectively as "Defendants"), for violations of federal and state law and in support of its Complaint states the following:

## PARTIES

1.      Vendita is a Florida limited liability company with a principal address at 503 E. Jackson St. PMB 254, Tampa, Florida 33602.

2.     Sullinger is an individual residing in Hillsborough County, Florida. Sullinger is a co-owner of Vendita.

3.     McAdams is an individual residing in Hillsborough County, Florida. McAdams is a co-owner of Vendita.

4.     Defendant NAI Global is a Delaware Corporation with a principal place of business at 186 Princeton-Hightstown Road, Building 3A, Suite 7, Princeton Junction, New Jersey 08550.

5.     Defendant Burns Scalo is a Pennsylvania Corporation with a principal place of business at 965 Greentree Road Ste. 400, Pittsburgh, Pennsylvania 15220.

6.     All conditions precedent to filing this action have been performed, waived or excused.

## <u>JURISDICTION AND VENUE</u>

7.     NAI Global has committed one or more tortious acts or omissions in this state and/or committed a tortious injury in this state caused by an act or omission outside of this state.

8.     NAI Global regularly does business and/or solicits business in this State, engages in persistent course of conduct in this State, and/or derives substantial revenue from services rendered in this State.

9.    Burns Scalo has committed one or more tortious acts or omissions in this state and/or committed a tortious injury in this state caused by an act or omission outside of this state.

10.    Burns Scalo regularly does business and/or solicits business in this State, engages in persistent course of conduct in this State, and/or derives substantial revenue from services rendered in this State.

11.    Further, the events which form the basis of Plaintiffs' Complaint both occurred in and are related to the ownership of exclusive rights to a geographic territory that encompasses the Florida Counties of Hernando, Hillsborough, Pasco, Pinellas, Sarasota, Manatee, DeSoto, Charlotte, Collier, Hendry, Lee, Hardee, Highlands and Glades.

12.    The amount in controversy in this action exceeds $75,000, exclusive of interest and costs, as Plaintiffs seek damages for Defendants wrongful acts in effectively defrauding Plaintiffs of money and wrongfully terminating and commandeering the Plaintiffs' rights to a geographic territory of the counties listed above.

13.    Therefore, Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

14.    Venue is proper in this Court.

## FACTUAL ALLEGATIONS

### NAI Global's Member Agreement with Skyway Florida, LLC
### and the assignment to Vendita CRE, LLC

15.    NAI Global is a commercial real estate firm which provides marketing services and connections to independent commercial real estate companies across the globe through a membership program. NAI Global's membership program grants certain rights of exclusive geographic territories and licenses its service marks (the "NAI Marks") to NAI Global's members in exchange for payment of annual membership fees, marketing assessment fees, and related network transaction fees.

16.    Skyway Florida, LLC, (hereinafter "Skyway Florida") a Florida limited liability company that had a principal place of business at 5426 Bay Center Drive, Suite 275, Tampa, Florida 33609, was formed on August 22, 2022 between several NAI members to provide commercial real estate broker services under the NAI Marks to certain counties in Florida.  *See* Declaration of Brandy McAdams at ¶ 4 attached hereto as **Exhibit A**.

17.    On or about November 14th, 2022, NAI Global entered into a NAI Global Member Agreement with Skyway Florida. *Id* at ¶ 6. A true and correct copy of the NAI Global Member Agreement is attached hereto as **Exhibit B**. The NAI Global Member Agreement is hereinafter referred to as the "NAI Skyway Agreement".

18.    Notably, prior to signing the NAI Skyway Agreement, Skyway Florida, LLC was formed and began providing services under the NAI Marks with verbal assurances from NAI Global that a written agreement was forthcoming. *Id* at ¶ 5.

19.    Pursuant to the NAI Skyway Agreement, NAI Global granted Skyway Florida exclusive rights to market the NAI Marks in certain geographic locations which include the Florida Counties of Hernando, Hillsborough, Pasco, Pinellas, Sarasota, Manatee, DeSoto, Charlotte, Collier, Hendry, Lee, Hardee, Highlands and Glades (the "Territory") to identify itself as a network member of NAI Global's program in conjunction with commercial real estate matters. *Id* at ¶ 7.

20.    Plaintiff McAdams was a minority owner of Skyway Florida at the time of its formation in 2022. From 2022 until its dissolution in 2024, McAdams managed the day-to-day business operations, training, collaborating with the team and transacting business on behalf of Skyway Florida and NAI Global pursuant to the NAI Skyway Agreement. *Id* at ¶ 8.

21.    On or about December 21, 2023, Sullinger purchased all of the membership shares of Skyway Florida, except for McAdams' shares. Thereafter, McAdams and Sullinger became the sole owners of Skyway Florida. *Id* at ¶ 10.

22.     On or about February 6, 2024, Sullinger and McAdams attended the NAI Global Conference in Frisco, Texas. Sullinger and McAdams spent thousands of dollars for their team to attend the Conference at the request of NAI Global. *Id* at ¶ 19

23.     At the Conference, Sullinger and McAdams met with former NAI Global CEO, Jay Olshonsky ("Olshonsky"), and now current CEO, Alex Waddey ("Waddey"), to discuss the commercial real estate market in Tampa and the future of Skyway Florida. *Id* at ¶ 20.

24.     During this meeting, Waddey and Olshonsky agreed that a rebrand away from Skyway Florida was necessary due to some recent bad press that Skyway Florida was receiving related to issues with a previous owner. They encouraged Sullinger and McAdams to completely rebrand and stated that NAI Global would approve an assignment of the NAI Skyway Agreement. *Id* at ¶ 21.

25.     In reliance on Waddey and Olshonsky's statements and actions during the meeting on February 6, 2024, Sullinger and McAdams set up Vendita CRE, LLC and began initiating a transfer of Skyway Florida's assets. This included negotiations with NAI Global for the assignment of the NAI Skyway Agreement to Vendita. *Id* at ¶ 26.

26.     In reliance on Waddey and Olshonsky's statements and action both during and after the February 6th meeting, the Plaintiff's launched a complete

rebranding of their business, paid for and began advertising to promote the new NAI brand, hired a full-time property manager and paid a $20,000.00 signing bonus. *Id*.

27.     In further reliance on Waddey and Olshonsky's promises and actions both during and after the February 6th meeting, Plaintiff spent thousands of dollars on several aspects of growing the business, all to the benefit of NAI Global, including but not limited to attending and contributing funds to NAI events and recruiting for new business for NAI Global. *Id.*

28.     Similar to how Skyway Florida began using the NAI Marks prior to the finalizing of a formal written agreement, Plaintiffs began using the NAI Marks pursuant to the NAI Skyway Agreement with the understanding from NAI Global that the agreement would be assigned to Vendita in due course. *Id* at ¶ 27.

29.     NAI Global did not raise any issues with the Plaintiffs regarding Vendita's use of the NAI Marks during this time. *Id*.

30.     The parties negotiated the details of the assignment from February through August of 2024. Negotiations mainly dealt with the counties that would be included in the Territory. On August 5, 2024, after the Parties had come to an agreement on the Territory, Waddey asked NAI Global's attorney via email to finalize the assignment of the NAI Skyway Agreement to Vendita. *Id* at ¶ 28 and 29.

31.    During this time, NAI Global asked Vendita if it was interested in adding Polk County to its Territory, or selling back some of its Territory so that NAI Global could present a smaller territory to other interested parties. Vendtia asked to see what this deal would look like monetarily but never heard anything in return. *Id* at ¶ 28.

32.    On or about September 18, 2024, Waddey sent an email to Sullinger further assuring him that the NAI Skyway Agreement would be assigned to Vendita and that no new agreement would be required. *Id* at ¶ 30.

33.    In reliance on CEO Waddey's assurances, Vendita continued to operate the brokerage under the NAI Marks and in accordance with the NAI Skyway Agreement.

34.    From February through November of 2024, Vendita made payments to NAI Global for the monthly installment payments owed under the NAI Skyway Agreement. Those payments were accepted by NAI Global without question. *Id* at ¶ 31.

35.    Vendita was also receiving emails from NIA Global related to updates of NAI Global's policies and practices which were reserved for companies in the NAI network.

36.     On or about September 27, 2024, Skyway Florida was administratively dissolved in further reliance on NAI Global's assurance to the Plaintiffs that an assignment to Vendita was imminent. *Id* at ¶ 31.

37.     From February through November, Vendita operated pursuant to the NAI Skyway Agreement, made monthly payments to NAI Global which were all accepted, and continued to market and sell the services under the NAI Marks in the Territory using Plaintiffs own money to fund Vendita and promote the NAI brand all for the benefit of NAI Global.

38.     On December 6, 2024, a Notice of Default and Demand was sent by NAI Global to McAdams (the "Default Letter"). The Default Letter notified McAdams of the immediate termination of the NAI Skyway Agreement due to several alleged violations of the NAI Skyway Agreement. Such alleged violations included the dissolution of Skyway Florida and Skyway Florida's assignment of the NAI Marks to Vendita. A true and correct copy of the Default Letter is attached hereto as **Exhibit C**. *See also* **Exhibit A** at ¶ 33.

39.     Plaintiffs were shocked to receive the Demand Letter considering all of the actions that were taken in using the NAI Marks and dissolving Skyway Florida – had been done based on the encouragement and assurances provided by NAI Global.

40.     At all times mentioned above, NAI Global was aware of Plaintiffs' actions and plans to rebrand. Further, NAI Global encouraged Plaintiffs to rebrand and use the NAI Global Marks. NAI Global also accepted all of the monthly payments that were made by Vendita pursuant to the NAI Skyway Agreement.

41.     Upon information and belief, NAI Global made these assurances and encouraged these actions in order to induce the owners of Skyway Florida and Vendita to breach the terms of the NAI Skyway Agreement, allowing NAI Global to wrongfully terminate the NAI Skyway Agreement and fraudulently take control over the Territory.

**Burns Scalo's partnership with NAI Global and take over of the Territory**

42.     Simultaneously with the events outlined above, Defendant Burns Scalo expressed interest to McAdams and Sullinger in entering a partnership to access the Territory.

43.     On January 5, 2024, Scott DiGuglielmo, Vice President of NAI Burns Scalo, emailed McAdams stating that Burns Scalo was new to the NAI network and was traveling to Tampa and was interested in meeting the McAdams and her team to discuss partnership opportunities. He stated that they were encouraged by Olshonsky to reach out to McAdams to connect while they were in town. *Id* at ¶ 13.

44.     On January 9, 2024, McAdams and Sullinger met with three executive members of Burns Scalo, including Chief Executive Officer James Scalo, Executive Vice President Scott DiGuglielmo and President Brian Walker. During this meeting, they discussed the opportunity to partner together in the future and Skyway Florida's plans to rebrand to Vendita. *Id* at ¶ 14 and 15.

45.     Burns Scalo were told during this meeting that McAdams and Sullinger were meeting with Olshonsky at the NAI Global Conference to discuss the future of Skyway Florida and the rebranding effort. *Id* at ¶ 17.

46.     Following this meeting, James Scalo sent emails to McAdams continuing to express his interest in investing in her office and establishing a presence in the Territory. *Id* at ¶ 18.

47.     During the NAI Global Conference in Frisco, Texas on February 6, 2024, McAdams and Sullinger met with the leadership from Burns Scalo again to discuss a potential partnership.

48.     McAdams and Sullinger spoke to Burns Scalo about their meeting with NAI Global and that NAI Global had supported the rebranding and continued operation of the Territory under Vendita moving forward and that the parties were working on an assignment of the Territory. *Id* at ¶ 24.

49.     Burns Scalo again expressed their interest in a potential partnership with Vendita in order for Burns Scalo to access the Territory. *Id* at ¶ 23.

50.     Burns Scalo leadership also spoke with the NAI group from Jacksonville regarding a partnership in order to access their territory. *Id* at ¶ 25.

51.     On or about March 25, 2025, Burns Scalo publicly announced its opening of an NAI office in Florida and its ownership of the territory along Florida's Gulf Coast. *Id* at ¶ 34.

52.     Notably, this territory includes all the counties that were previously owned by Skyway Florida and were being assigned to Vendita prior to NAI Global's termination of the NAI Skyway Agreement. *Id*.

53.     Burns Scalo used this information to circumvent Plaintiffs and negotiate their own deal with NAI Global for ownership of the Territory behind Plaintiffs back.

54.     Burns Scalo's actions lead NAI Global to terminate the NAI Skyway Agreement and ceasing all negotiations of the assignment with Plaintiffs.

55.     NAI Global defrauded the Plaintiffs and, with the assistance of Burns Scalo gained control of the exclusive rights to the Territory.

## COUNT I:

### Promissory Estoppel against Defendant NAI Global

56.    Plaintiffs re-allege and incorporate the allegations in paragraphs 15 to 41 above as if fully set forth herein.

57.    Defendant NAI Global made promises and assurances through statements encouraging the Plaintiffs to rebrand to Vendita, use the NAI Marks in the Territory, and that there would be a formal written assignment of the NAI Skyway Agreement to Vendita.

58.    Defendant NAI Global also made further assurances through their actions and conduct such as accepting payments from Vendita and sending the Plaintiffs' membership emails as if Vendita had assumed the role of Skyway Florida in the NAI Skyway Agreement.

59.    Defendant NAI Global's aforementioned promises, conduct, and assurances that NAI Global would accept an assignment of the NAI Skyway Agreement and Territory to Vendita caused Plaintiffs' to detrimentally rely on NAI Global's promises, conduct and assurances when it formed Vendita, paid membership fees to NAI Global, launched a complete rebrand, allowed Skyway Florida to be administratively dissolved, spent thousands of dollars to advertise, host and attend events

and recruit business on behalf of NAI Global, and hired a team of professionals, including a full-time property manager in order to manage the business, all for the benefit of NAI Global.

60.    Defendant NAI Global reasonably should have expected that its assurances would induce Plaintiffs into taking action in forming Vendita, paying membership fees, launching a rebrand, dissolving Skyway Florida, spending thousands of dollars on advertising, hosting and attending events and recruiting business for NAI Global, hiring a team of professionals, including a full-time property manager in order to manage the business, all in reliance on those assurances.

61.    NAI Global's promises did induce Plaintiffs into investing substantial sums of money, time, and effort into forming Vendita, rebranding to NAI Vendita, growing NAI Vendita's business, and allowing Skyway Florida to administratively dissolve, all while NAI Global continued to collect its membership fees from Vendita.

62.    Injustice can be avoided here only by enforcing NAI Global's promise to Vendita that the NAI Skyway Agreement be assigned to Plaintiffs along with the ownership of the Territory.

## COUNT II:
### Fraudulent Inducement against NAI Global

63.    Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 15 to 41 above as if fully set forth herein.

64.    NAI Global, through its representatives Waddey and Olshonsky, made representations to Sullinger and McAdams that they supported a rebrand of Skyway Florida to Vendita and further that they would assign NAI Skyway's Agreement and Territory to Vendita. These representations were made through verbal and written assurances and conduct, including, but not limited to accepting payment of membership fees from Vendita.

65.    Waddey and Olshonsky, acting on behalf of NAI Global knew or should have known that these representations were false.

66.    NAI Global, through its representatives, intended that the false representations would induce Sullinger and McAdams to open a new company, rebrand their business, and close Skyway Florida.

67.    Plaintiffs justifiably relied on these false representations which resulted in substantial injury when NAI Global terminated the agreement with Skyway Florida for the exact actions that NAI Global induced and influenced the Plaintiffs to make.

68.    As a direct and proximate result of Plaintiffs' reliance on NAI Global's false representations, Plaintiffs have suffered damages, including,

but not limited to financial loss and lost profits in an amount to be proven at trial.

69.    NAI Global's conduct was willful, wanton and malicious, entitling Plaintiffs to an award of punitive damages.

## COUNT III:
## Unjust Enrichment  against NAI Global

70.    Plaintiffs re-allege and incorporate the allegations in paragraph 15 to 41 above as if fully set forth herein.

71.    Plaintiffs conferred a benefit upon NAI Global, specifically, Plaintiffs made monthly payments to NAI Global pursuant to the Agreement terms that NAI Global previously had with Skyway Florida.

72.    NAI Global had knowledge of the benefit and voluntarily accepted and retained the benefit from Plaintiffs.

73.    The circumstances are such that it would be unjust for NAI Global to retain the benefit without paying its fair value.

74.    Plaintiffs have suffered damages as a result of Defendant's unjust enrichment.

## COUNT IV:
## Tortious Interference with Business Relationship against Burns Scalo

75.    Plaintiffs re-allege and incorporate the allegations in paragraph 42 to 55 above as if fully set forth herein.

76.     A valid business relationship existed between Plaintiffs and NAI Global, which afforded Plaintiffs' existing legal or contractual rights.

77.     A valid prospective business relationship existed between Plaintiffs and NAI Global which afforded Plaintiffs prospective legal or contractual rights.

78.     Defendant Burns Scalo had knowledge of this existing and prospective business relationship between Plaintiffs and NAI Global.

79.     Defendant Burns Scalo was aware that McAdams and Sullinger's were rebranding Skyway Florida to Vendita and NAI Global's support of that rebrand.

80.     Defendant Burns Scalo was aware that Plaintiffs and NAI Global were negotiating an assignment which would give Plaintiffs the Territory previously owned by Skyway Florida.

81.     Defendant Burns Scalo intentionally and unjustifiably used this information to interfere with the relationship between Plaintiffs and NAI Global when they contacted NAI Global and negotiated directly with NAI Global for the Territory.

82.     The interference was without privilege or justification and was done with the intent to cause harm to Plaintiffs.

83.     As a direct and proximate result of Burns Scalo's interference, the relationship with NAI Global was terminated, and Plaintiffs suffered damages, including, but not limited to financial loss, loss of profits and loss of exclusive rights to the Territory.

84.     Defendant Burns Scalo's conduct was willful, malicious, and in reckless disregard of Plaintiffs' rights, entitling Plaintiffs to punitive damages.

## COUNT V:
## Civil Conspiracy against All Defendants

85.     Plaintiffs re-allege and incorporate the allegations in paragraphs 1 to 55 above as if fully set forth herein.

86.     Defendants NIA Global and Burns Scalo entered into an understanding, express or implied to commit an unlawful act or to accomplish a lawful act by unlawful means.

87.     The object of the conspiracy was to defraud Plaintiffs of the rights to the Territory under the NAI Skyway Agreement and interfere with Plaintiffs' business relationships.

88.     In furtherance of the conspiracy, NIA Global committed overt acts, including but not limited to, making false representations to the Plaintiffs' that the parties would enter into an assignment of the NAI Skyway Agreement and the Territory — in order to fraudulently induce

Plaintiffs' into starting a new company, completely rebranding its business, closing Skyway Florida, all while NAI Global collected payments from Plaintiffs' pursuant to the NAI Skyway Agreement.

89.    Once Plaintiffs were induced into these actions, NAI Global claimed in its Demand Letter that it was terminating the NAI Skyway Agreement because Skyway Florida had breached the agreement by dissolving its business and assigning its rights to use the NIA Marks to Vendita.

90.    Simultaneously, NAI Global negotiated a new agreement for the Territory with Defendant Burns Scalo.

91.    Also, in furtherance of this conspiracy, Burns Scalo, who was aware of the business relationship between Plaintiffs' and NIA Global, sought to tortiously interfere with Plaintiffs' business relationship by circumventing Plaintiffs and negotiating directly with NAI Global for rights to the Territory.

92.    As a direct and proximate result of the conspiracy and the overt acts committed in furtherance thereof, Plaintiffs have suffered actual damages, including, but not limited to financial loss, lost profits and loss of the Territory.

93.    The underlying wrongful act that forms the basis of this conspiracy is fraudulent inducement and tortious interference both of which are independently actionable under Florida law.

94.    Each Defendant knowingly participated in the conspiracy and is jointly and severally liable for all damages resulting from the wrongful acts committed pursuant to the conspiracy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against the Defendants as follows:

A.  Judgment in favor of Plaintiffs and against Defendants on all of Plaintiffs' claims;

B.  For an order awarding Plaintiffs' damages in an amount to be determined, as well as compensatory, consequential, statutory, special, treble and punitive damages, prejudgment and post-judgment interest on its damages award, and Plaintiffs' reasonable attorneys' fees and costs of suit;

C.  Such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and the Seventh Amendment, Plaintiffs demand a trial by jury on all claims and issues so triable.

Dated: October 9, 2025

/s/ Thomas H. Stanton
Thomas H. Stanton
Bochner PLLC
1040 Avenue of the Americas
15th Floor
New York, New York 10018
(646) 971-0685
TStanton@Bochner.Law

*Attorney for Plaintiffs*